McClendon, j.
|2The defendant, Kevin Paul Benoit, was charged by bill of information with one count of indecent behavior with a juvenile, *494 H.G.,[1] a violation of La. R.S. 14:81, and pled not guilty. Following a jury trial, he was found guilty as charged. Thereafter, the State filed a habitual offender bill of information against him, alleging he should be sentenced under LSA-R.S. 15:537 B.[2] The defense moved to quash the habitual offender bill of information, and the motion was granted. The defendant was sentenced to twenty years at hard labor, with the first five years without the benefit of probation, parole, or suspension of sentence. The defendant now appeals, contending the trial court erred in allowing the introduction into evidence of State Exhibit # 1, which failed to comply with the authentication requirements of 28 U.S.C. § 1738 and LSA-C.E. art. 902(4). The State also appeals, contending the trial court erred in granting the motion to quash the habitual offender bill. For the following reasons, we find no merit in either assignment of error and affirm the conviction and sentence.

FACTS

At trial on January 20, 2010, the victim, H.G., who was born on September 26, 2002, testified that she lived with her father in Prairieville, but that she visited her mother’s house sometimes. She indicated that on a visit to her mother’s house two years earlier, the defendant touched the top of her “cookie” or “private” when she was in the bedroom, while her mother was using the bathroom.
The State also played a recording of a September 24, 2007 interview with the Terrebonne Children’s Advocacy Center. In the interview, the victim stated “Kevin” lived with her mother and had touched her “private” with his hand, under her panties, when she was visiting her mother. The victim indicated the touching occurred when she was lying between “Kevin” and her mother on the Rbed. The victim identified the vagina on a sketch of a girl as the “cookie” or “private.”
The victim’s mother, B.O., who was divorced from the victim’s father, also testified at trial. During August of 2007, B.O. was involved in a relationship with the defendant, a convicted sex offender from Mississippi. The defendant told B.O. the charges against him in Mississippi were false. The victim lived with her father, but visited B.O. As part of the custody agreement, B.O. had been ordered not to allow the defendant to be at home when the victim visited. B.O. conceded, however, that sometimes the defendant was present in her home when the victim visited.
In August of 2007, the victim told B.O. that the defendant had touched her “on her cookie” while B.O. was in the shower. B.O. argued with the defendant and then went with the victim to the home of B.O.’s mother. Thereafter, the victim went back to live with her father, and B.O. went back to live with the defendant. B.O. did not report the victim’s accusation against the defendant to the police.
Approximately two days later, on August 17, 2007, B.O. married the defendant. According to B.O., on the day of the wedding, the defendant told her he had touched the victim “over her panties,” but he was sorry and it would never happen again. Also according to B.O., the defen *495 dant told her he was on parole in Mississippi because he had “fingered” a girl while he masturbated and had tried to have sex with her. Also according to B.O., after the defendant was arrested, he told her to tell his lawyer that the victim’s accusation against him “wasn’t true” and that he had never been around her. B.O. claimed the defendant told her if she did not say what he told her to say, she would never see her children again and would lose her home.
The defendant also testified at trial. He denied sexually abusing the victim. He denied being around B.O. while her children were present and specifically denied being present when the victim was visiting B.O. in August orJjSeptember of 2007. He also denied confessing to B.O. that he had abused the victim or anyone else.
The defendant conceded he pled guilty in connection with predicate # 1, but claimed he only did so because his attorney told him he would “probably receive probation.”

APPLICABILITY OF 28 U.S.C. § 1738

In his sole assignment of error, the defendant argues the trial court erred in allowing the introduction into evidence of State Exhibit # 1, which failed to comply with the authentication requirements of 28 U.S.C. § 1738 and LSA-C.E. art. 902(4).
Section 1738 of Title 28 of the United States Code provides, in pertinent part:
The Acts of the legislature of any State, ... of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, ... thereto.
The records and judicial proceedings of any court of any such State, ... or copies thereof, shall be proved or admitted in other courts within the United States ... by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State, ... from which they are taken.
Louisiana Code of Evidence art. 902, provides, “Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following: ... (4) Presumptions under Acts of Congress and the Louisiana Legislature. Any signature, document, or other matter declared by Act of Congress or by Act of the Louisiana Legislature to be presumptively or prima facie genuine or authentic.”
During trial, the State offered into evidence State Exhibit # 1, which included a copy of a January 22, 1997 grand jury indictment, under State of Mississippi, County of Rankin, Cause # 6076. The indictment charged that on September 27, 1996, Kevin Paul Benoit committed one count of gratification of |slust and one count of sexual battery involving K.B., a child over the age of twelve years, but under the age of eighteen years, while Kevin Paul Benoit was in a position of trust, being the child’s stepparent. State’s Exhibit # 1 also included a copy of a July 7, 1997 judgment of conviction in the same case, indicating that following advice of his Miranda[3] rights, Kevin Paul Benoit pled guilty to sexual battery in the case. Additionally, State’s Exhibit # 1 further included a copy of a July 18, 1997 order of sentence in the same case, indicating Kevin Paul Benoit was sentenced for sexual battery to fifteen years in the custody of the Mississippi Department of Corrections, *496 with execution of the last seven years stayed and suspended on condition of Kevin Paul Benoit successfully completing three years of supervised probation. The copies of the indictment, judgment of conviction, and order of sentence were stamped with the seal of the Circuit Court of Rankin County, Mississippi, and certified true and correct copies by Carol B. Swilley, Circuit Clerk.
The defense objected to State Exhibit # 1, arguing the exhibit failed to satisfy the “double certification” requirement of 28 U.S.C. § 1738 and LSA-C.E. art. 902(4), as it lacked the certification of the judge of the court that the attestation was in proper form. The State argued State Exhibit # 1 was self-authenticating under LSA-C.E. art. 902(1), as “[a] document bearing a seal, ... purporting to be that of ... any state, district, ... or of a political subdivision, department ... thereof, ... and a signature purporting to be an attestation....” The court ruled in favor of the State, and the defense objected to the ruling of the court.
There was no error. Section 1738 of Title 28 of the United States Code did not bar admission of State Exhibit # 1 in this case. 28 U.S.C. § 1738 was enacted to implement the full faith and credit clause of the United States Constitution by providing a way of exemplifying the records of judicial proceedings held in one state so that such records would be admissible in later judicial proceedings held in another state. Thus, this statute merely means full faith and credit must be given if certain requirements are met. However, | (¡evidence of judicial proceedings may be admissible if less is shown than the statute requires when it conforms to the rules of evidence of the state where the trial is being held. Furthermore, any stringent rules as to what is required to prove a prior conviction or identity of the convicted person in another state is somewhat obviated by the defendant’s own admission that he was in fact previously convicted of a felony in that state. Donald v. Jones, 445 F.2d 601, 606 (5th Cir.), cert. denied, 404 U.S. 992, 92 S.Ct. 537, 30 L.Ed.2d 543 (1971). State Exhibit # 1 was self-authenticating under LSA-C.E. art. 902(1). See State v. Uloho, 04-55, pp. 20-22 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, 931-32, writ denied, 2004-1640 (La.11/19/04), 888 So.2d 192, and writ denied 08-2370 (La.1/30/09), 999 So.2d 753.
This assignment of error is without merit.

THE STATE’S APPEAL OF GRANTING OF MOTION TO QUASH

The State appeals from the granting of the motion to quash the habitual offender bill of information, arguing the trial court erred in refusing to use the defendant’s Mississippi sexual battery conviction to sentence him under LSA-R.S. 15:537 B.
Louisiana Revised Statutes 15:537 B provides:
The court shall sentence a person who has on two or more occasions previously pleaded guilty, nolo contendere, or has been found guilty of violating R.S. 14:42, 42.1, 43, 43.1, 43.2, 43.3, 43.4, 43.5, 78, 78.1, 80, 81, 81.1, 81.2, 89.1, or 107.1(C)(2) to life imprisonment without the benefit of parole, probation, or suspension of sentence.
Legislative intent is the fundamental question in all cases of statutory interpretation, and rules of statutory construction are designed to ascertain and enforce the intent of the statute. State v. Peters, 05-2069, pp. 4-5 (La.App. 1 Cir. 5/5/06), 935 So.2d 201, 203.
*497 It is presumed that the legislature enacts each statute with deliberation and with full knowledge of all existing laws on the same subject. Thus, legislative language is interpreted by the courts on the assumption that the legislature was aware of existing statutes, rules of construction, and judicial decisions interpreting |7those statutes. It is further presumed that the legislative branch intends to achieve a consistent body of law. Peters, 05-2069 at p. 5, 935 So.2d at 203-04.
A criminal statute must be given a genuine construction consistent with the plain meaning of the language in light of its context and with reference to the purpose of the provision. LSA-R.S. 14:3. Moreover, it is a well-established tenet of statutory construction that criminal statutes are subject to strict construction under the rule of lenity. The rule of lenity applies not only to interpretations of the substantive ambit of criminal laws, but also to the penalties imposed by those laws. Peters, 05-2069 at p. 5, 935 So.2d at 204.
The defense moved to quash the habitual offender bill of information, arguing, inter alia, the defendant should not be sentenced under LSA-R.S. 15:537 B because the guilty plea from Rankin County, Mississippi, was not a violation of La. R.S. 14:42, 42.1, 43, 43.1, 43.2, 43.3, 43.4, 43.5, 78, 78.1, 80, 81, 81.1, 81.2, 89.1, or 107.1(C)(2). At the hearing on the motion, the defense argued the language of LSA-R.S. 15:537(B) was plain and specific and did not allow consideration of a crime from another state. The State argued sexual battery in Mississippi was “substantially similar” to sexual battery in Louisiana, a violation of LSA-R.S. 14:43.1; the court could take cognizance of the fact the sexual battery in Mississippi would also be a sexual battery in Louisiana; and thus, the court should sentence the defendant under La. R.S. 15:537 B. The court granted the motion to quash, noting, “[LSA-R.S. 15:537 B] specifically points out Revised Statute 14:78, 78.1, et cetera, et cetera, et cetera. It doesn’t have anything to say in here about ‘or similar offenses in other jurisdictions[.]’ It is very, very specific. This Court doesn’t make laws, as some other Courts do. The Court follows the law.”
Promulgation of laws is a legislative function. As noted by the trial court, by its express terms, LSA-R.S. 15:537 B allows consideration of certain enumerated violations of the Louisiana Revised Statutes, but the statute contains no language allowing consideration of offenses from other states, which if 18committed in this state, would also violate those statutes.[4] The fact that the Legislature drafted LSA-R.S. 15:537 B without such language prevents us from considering the violations that occurred in Mississippi.[5] This assignment of error is without merit.
For the foregoing reasons, we affirm defendant’s conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.

. The victim is referenced herein only by her initials. See LSA-R.S. 46:1844 W.

. Predicate # 1 was set forth as the defendant's July 7, 1997 guilty plea, under Rankin County Circuit Court (Mississippi) case # 6076, to sexual battery. Predicate # 2 was set forth as the defendant's January 27, 1986 guilty plea, under Seventeenth Judicial District Court Docket # 171,542, to carnal knowledge of a juvenile.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. In other instances, the legislature has chosen to include specific language which allows Louisiana courts to consider convictions in other jurisdictions. See LSA-R.S. 15:529.1 A(l) prior to its amendment by 2010 La. Acts Nos. 911, § 1 and 973, § 2, LSA-R.S. 14:98 F(l), and LSA-R.S. 40:966 E(4).

. We do not reach the issue of whether or not the defendant could have been sentenced as a habitual offender pursuant to LSA-R.S. 15:529.1 (A)( 1 )(b)(ii), prior to its amendment by 2010 La. Acts Nos. 911, § 1 and 973, § 2.